[Crim. No. 650.    First Appellate District.—December 30, 1916.]

## THE PEOPLE, Respondent, v. JUDAH BENJAMIN, Appellant.

CRIMINAL LAW—CREDIBILITY OF WITNESSES AND WEIGHT OF EVIDENCE—QUESTIONS FOR JURY.—In a criminal action the credibility of the witnesses and the weight of the evidence are questions peculiarly for the jury, and, in the absence of a showing of inherent improbability, the appellate court is not permitted to interfere with the jury's conclusion upon the evidence.

ID.—MURDER—VERDICT SUPPORTED BY EVIDENCE.—In a prosecution for the killing of a police officer, a verdict of murder in the first degree is sufficiently supported by testimony of several witnesses who positively identified the defendant as the man who fled from the scene of the shooting, and evidence of anonymous letters, shown by expert testimony to be in the handwriting of the defendant, admitting the killing.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. F. B. Ogden, Judge.

32 Cal. App.—29

The facts are stated in the opinion of the court.

Judah Benjamin, *in pro. per.*, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

THE COURT.—By an information filed in the superior court of Alameda County the defendant was charged with the crime of murder. He was convicted of murder in the first degree, and his penalty therefor—life imprisonment—was fixed by the verdict of the jury.

The facts of the case as revealed by the evidence adduced upon the trial are substantially these: About the hour of 9 o'clock on the evening of March 4, 1916, Officer Gushe of the Oakland police department was seen to approach and place his hand upon the shoulder of a man who was standing or walking in the vicinity of Twelfth and Clay Streets in the city of Oakland. The officer, holding the man by the shoulder, proceeded a few steps, when the latter turned and engaged in a scuffle with the officer, during which a shot from a revolver was fired, after which the man broke the grasp of the officer and fled. The officer followed for a short distance, and after firing several ineffectual shots at the fleeing man, fell to the sidewalk as the result of a wound inflicted by a 32-caliber bullet, and which wound, it was subsequently shown, caused his death. The man continued his flight, and, although a crowd pursued him, made good his escape. The defendant was arrested several days later and charged with the killing. Several witnesses who were at or near the scene of the scuffle with the officer, gave a description of the man whom he apparently had under arrest which fitted the defendant with exactness, and several other witnesses positively identified the defendant as the man who passed within a few feet of them under a bright light pursued by a crowd and running from the scene of the shooting.

Subsequent to the killing, and prior to the defendant being charged therewith, the defendant attracted the attention of Officer Hughes of the San Francisco police department, who observed him loitering and apparently begging on Sutter Street in said city. Hughes approached the defendant and asked him if he was working. He replied in the negative, and

in response to further questions concerning his place of abode and means of livelihood demanded to know why the inquiry was made, whereupon Hughes displayed his star. The defendant then exclaimed, "I shoot the likes of you; got no use for you, and I am going to get you before I get through with you." Hughes thereupon placed the defendant under arrest, and was in the act of searching him when the defendant drew a 32-caliber revolver from his pocket and pressed it against the body of Hughes. The officer grasped the revolver, and, breaking it, proceeded with the search of the defendant's person, which revealed twenty-one 32-caliber loaded pistol cartridges, a large butcher-knife, and a razor.

There was offered and received in evidence on behalf of the people a letter written, addressed, and delivered to the chief of police of Oakland subsequent to the killing of Officer Gushe and before the arrest of the defendant, which was shown by expert testimony to be in the handwriting of the defendant, and which reads as follows:

"I was the man that shot the police Gushe and to tell you there may be more killed if you don't have the police do thing right for you have now in the police department that are no good. All they want is their pay every month, so look out."

This letter was followed by the introduction in evidence of another letter also written, addressed, and delivered to the chief of police of Oakland subsequent to the killing of Gushe and prior to the arrest of the defendant, which likewise was shown to have been written by the defendant, and which reads as follows:

"San Francisco, Cal., March 11, 1916.
"Chief of Police, Oakland, Cal.

"Dear Sir: The men on the force under you don't seem to realize they are performing a certain service for the public and that when they exceed that and overstep their bounds and interfere into people's private affairs, they deserve to be shot. That is what happened to Gushe and it should happen to a number more. What were most of these men before they become policemen? Gushe's delight when he was a Pinkerton at the race track was to wing men with his club and he only received back what he got. One dollar a head is the price they paid in New York for shooting these police, and

let us hope it won't be long before that rate is established here and then what is left of the force will be men.

"Respectfully yours,

"The One Who Shot Gushe."

The defendant did not take the stand in his own behalf. He rested his defense primarily upon the testimony of several witnesses who were present at or near the scene of the killing, who, in addition to differing to some extent from the witnesses for the people in their description of the man who did the shooting, testified that they could not identify the defendant as the man whom they saw scuffling with Officer Gushe and running away from the scene afterward. The discrepancies and differences existing in the description of the murderer of the officer given by the respective witnesses for the prosecution and defense, created no more than a conflict in the evidence, which of course will not suffice to disturb the verdict of the jury. Moreover, in addition to the testimony of the several witnesses for the people, or the defendant, who could do no more than describe the man whom they saw scuffling with Officer Gushe, there was the evidence of the letters written by the defendant, which in effect were an admission of guilt, and the testimony of the several witnesses who positively identified the defendant as the man who fled from the scene of the shooting.

Much of the argument presented in support of the appeal is devoted to a discussion of the credibility of the witnesses and the weight of the evidence. Those were questions peculiarly for the jury; and in the absence of a showing of inherent improbability we are not permitted to interfere with the jury's conclusion upon the evidence. In short, we are satisfied that the evidence upon the whole case sufficiently supports the verdict and judgment. The conduct, conversation, and threats of the defendant upon being accosted and arrested by Officer Hughes in San Francisco, considered in conjunction with the defendant's letters to the Oakland chief of police, tend strongly, we think, to show that the defendant was obsessed with a peculiar and pronounced hatred for police officers in general and Officer Gushe in particular; and Officer Hughes' testimony therefore was material and relevant, and rightly received in evidence.

We find no error in the trial court's charge to the jury. The contention that the trial judge was prejudiced, and

therefore disqualified from sitting in the case, is not sustained by the record.

Error is assigned as to many of the rulings of the court, but upon examination we find them to be uniformly correct. Upon the whole we are satisfied that the defendant was fairly tried and justly convicted.

The judgment and order appealed from are affirmed.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 26, 1917.